UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDRE BOYNTON,                    )    Case No. 1:11CV2810
                                  )
          Petitioner,             )    JUDGE DONALD C. NUGENT
                                  )
     v.                           )    Magistrate Judge George J. Limbert
                                  )
MICHAEL SHEETS, Warden,           )
                                  )
          Respondent.             )    **REPORT AND RECOMMENDATION**
                                  )    **OF MAGISTRATE JUDGE**
                                  )
                                  )

On December 23, 2011, Petitioner, Andre Boynton ("Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas conviction for gross sexual imposition in violation of Ohio Revised Code ("ORC") § 2907.05(A)(1). ECF Dkt. #1[1].

On May 31, 2012, Respondent, Michael Sheets, Warden of Warren Correctional Institution, in Lebanon, Ohio, filed an Answer/Return of Writ.  ECF Dkt. #9.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

**I.**     **SYNOPSIS OF THE FACTS**

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

---

[1]  Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

Boynton's conviction results from an incident that occurred on the afternoon of April 30, 2007.  The victim, J[1], who was fourteen years old, provided the following account of the incident.

1.  It is this court's policy to protect the privacy of victims of sexual assault.

Upon her release from school, she began to walk home, and she heard someone calling to her from a car that was proceeding in the same direction.  The person, whom she later identified as Boynton, asked if she would let him take some pictures of her.  She refused to respond.

Boynton then made a U-turn so that the passenger side of his car was next to her.  He exited, ran around the car, grabbed her around the waist and, despite her protests, physically put her in the rear passenger seat.  He then returned to the driver's seat and proceeded.  J's efforts to either roll down the window or open the door proved unsuccessful, so she made note of where Boynton eventually took her, i.e., a house located on East 83rd Street near Quincy Avenue.

Boynton opened up the rear passenger door and pulled J into the house by her wrist.  As she entered, she saw two young women sitting in the living room.  They simply watched as Boynton took J upstairs, into a bedroom, and shut the door.

Boynton showed a digital camera to J. Placing some photographs of naked women on the display screen, he once again asked J if she would pose for him; he told her he would pay her.

Although J responded negatively, Boynton began trying to remove J's shirt.  Boynton touched her breast when he got J's shirt to her chest area.  J resisted, pushing his hands away.  They wrestled until J managed to put Boynton off balance and fled the room.

J ran downstairs and outside, intending to go home on foot.  After she had traveled a short distance, however, Boynton drove his car up to her and told her she did not have to walk home.  J noticed that the two young women she saw earlier were inside the car.  When J hesitated, Boynton got out and escorted her into his car.  He then drove her to a place near her original location, where he allowed her to exit before he drove away.  J immediately proceeded to a neighbor's house to use a telephone to call her mother.

J's mother was on her way home from work; at trial, she described J's demeanor during the call as "hysterical."  After hearing J's story, her mother told J to go to Hattie Dunn's apartment; Dunn occasionally acted as a child care provider to the family.

Dunn testified she had just arrived home when J appeared at her door.  J was "crying."  When Dunn questioned J about what happened to her, J said that a man "forced [her] into the car," drove her "someplace on Quincy," indicated he wanted "pictures," and "took her blouse off and fondled her * * * ."  Dunn called the police.

By the time the police arrived, J's mother was at Dunn's apartment.  Since J indicated she could find the house where she had been taken, the officers put J and her mother into their cruiser and drove to the area, where J

-2-

pointed out the house located at 2457 East 83rd Street.  The officers' efforts to contact someone inside proved fruitless.

However, when the officers returned J and her mother to their apartment complex, a witness provided some information to the officers about the car that dropped J off.  The officers included that information in their report, then turned the matter over to the detective bureau.

Det. Robert Ford was assigned to the case.  Based upon the information he obtained, he assembled a photographic array and presented it to J.  J chose Boynton's photo; J identified Boynton as the man who took her to the house on East 83rd Street.  The record reflects Boynton was arrested on May 17, 2007.

Ford executed a search warrant for the house on East 83rd Street on May 24, 2007.  He found several items of mail addressed to Boynton, a digital camera similar to the one J described, and numerous photographs of naked women.

Boynton was indicted in this case on July 10, 2007.  He was charged with two counts: 1) kidnapping, with a notice of prior conviction, a sexual motivation specification, and a repeat violent offender specification; and, 2) gross sexual imposition.  Boynton pleaded not guilty to the charges and was assigned counsel to represent him.

\*       \*       \*

On April 7, 2009, upon the supreme court's denial of Boynton's motion to disqualify, the trial court called the case for trial.  Boyton's motion to dismiss the case was denied.  At the conclusion of the state's case-in-chief, however, the trial court dismissed a portion of the language of the indictment on count one.  Boynton then presented the testimony of his friend, Anika George.

George stated that although Boynton was attempting to set up a "modeling" business, he did not take the photographs the police discovered during the search of her home.  She admitted that Boynton had a key to her home and could have used it while she was at work.

ECF Dkt. #255-261.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its May 2007 term, the Cuyahoga County, Ohio Grand Jury indicted Petitioner on: kidnapping in violation of ORC § 2905.01(A)(2), and/or (A)(3) and/or (A)(4) with a sexual motivation specification, a notice of prior conviction and a repeat violent offender specification; and gross sexual imposition in violation of ORC § 2907.05(A)(1).  ECF Dkt. #9-1 at 82-83.

On July 27, 2007, Petitioner, through counsel, filed a preliminary motion to suppress.  ECF Dkt. #9-1 at 84-85.

A February 10, 2009 court journal entry indicates that the trial court held a competency hearing on February 9, 2009 and found Petitioner competent to stand trial after the State of Ohio and Petitioner, through counsel, stipulated to findings of fact contained in a report of the court's psychiatrist.  ECF Dkt. #9-1 at 86.

On March 12, 2009, Petitioner pro se filed a motion to disqualify the trial judge who was presiding over four of his pending criminal cases and requested an independent DNA examination for two of Petitioner's pending criminal cases.  ECF Dkt. #9-1 at 87-96, 168. On April 7, 2009, the Supreme Court of Ohio addressed the motion and found no basis upon which to disqualify the trial court judge.  *Id*. at 168-170.

On April 6, 2009, Petitioner filed a motion to dismiss his case for violation of his speedy trial rights.  ECF Dkt. #9-1 at 171-174.

In a May 13, 2009 judgment entry, the trial court indicated that a jury had found Petitioner guilty of gross sexual imposition and not guilty of kidnapping.  ECF Dkt. #9-1 at 186.  The trial court sentenced Petitioner to eighteen months of imprisonment on the gross sexual imposition conviction, with a five year mandatory post-release control term.  *Id*. Petitioner was also classified as a Tier 1 registrant under the Adam Walsh Act.  *Id*.

**B**.    **Direct Appeal**

On June 15, 2009, Petitioner, through trial counsel, filed a notice of appeal and asserted the following assignments of error:

FIRST ASSIGNMENT OF ERROR

THAT THE DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTION FOR EFFECTIVE ASSISTANCE OF COUNSEL AS THE ACTIONS OF HIS TRIAL COUNSEL SO DEPARTS FROM THE STANDARD APPLICABLE AS TO DEPRIVE THE DEFENDANT-APPELLANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

SECOND ASSIGNMENT OF ERROR

A.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT
      ADMITTED STATE'S EXHIBITS 8, 9, AND 10.

B.    TRIAL COURT ABUSED ITS DISCRETION WHEN IT
      SENTENCED DEFENDANT TO THE MAXIMUM TERM OF
      INCARCERATION BY LAW.

THIRD ASSIGNMENT OF ERROR

DEFENDANT-APPELLANT ASSERTS THAT HIS CONVICTION IS
AGAINST THE SUFFICIENCY OF THE EVIDENCE.

FOURTH ASSIGNMENT OF ERROR

DEFENDANT-APPELLANT ASSERTS THAT HIS JURY VERDICT IS
AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

FIFTH ASSIGNMENT OF ERROR

DEFENDANT-APPELLANT CONTENDS THAT THE TRIAL COURT
DENIED HIS STATUTORY AND CONSTITUTIONAL RIGHTS TO A
SPEEDY TRIAL.

SIXTH ASSIGNMENT OF ERROR

THE CUMULATIVE ERROR COMMITTED IN THIS PRESENT CASE
DENIED DEFENDANT-APPELLANT HIS RIGHT TO A FAIR TRIAL.

ECF Dkt. #9-1 at 187-230.

On July 29, 2010, the Ohio appellate court affirmed the trial court's judgment and sentence,
overruling each of Petitioner's assignments of error.  ECF Dkt. #9-1 at 253-268.

**C**.    **Supreme Court of Ohio**

On September 13, 2010, Petitioner pro se filed a notice of appeal to the Supreme Court of
Ohio.  ECF Dkt. #9-1 at 269.  In his memorandum in support of jurisdiction, Petitioner pro se
asserted the following propositions of law:

FIRST PROPOSITION OF LAW:

THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF
COUNSEL AS COUNSEL FAILED TO ENSURE THAT THE
DEFENDANT WAS COMPETENT ENOUGH TO STAND TRIAL.

SECOND PROPOSITION OF LAW:

TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED
STATE'S EXHIBITS 8, 9, AND 10; ALSO WHEN THE TRIAL COURT

-5-

> SENTENCED THE DEFENDANT TO THE MAXIMUM TERM OF INCARCERATION BY LAW.
>
> THIRD PROPOSITION OF LAW:
>
> THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION IN THE PRESENT CASE.
>
> FOUR[sic] PROPOSITION OF LAW:
>
> THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> FIFTH PROPOSITION OF LAW:
>
> THE DEFENDANT WAS DENIED HIS FOURTH AMENDMENT CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.
>
> SIXTH PROPOSITION OF LAW:
>
> THE CULMULTIVE[sic] EFFECT OF ERRORS COMMITTED IN THIS PRESENT CASE DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL.

ECF Dkt. #9-1 at 271-307.  On December 29, 2010, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  *Id*. at 308.

### D.  **Petition for Post-Conviction Relief**

On March 8, 2010, while his direct appeal was pending before the Ohio appellate court, Petitioner, through counsel, filed a petition for post-conviction relief pursuant to ORC 2953.21.  ECF Dkt. #9-1 at 309.  Petitioner presented the following argument:

> THAT THE DEFENDANT WAS DEPRIVED HIS CONSTITUTIONAL RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTION FOR EFFECTIVE ASSISTANCE OF COUNSEL AS THE ACTIONS OF HIS TRIAL COUNSEL SO DEPARTS FROM THE STANDARD APPLICABLE AS TO DEPRIVE THE DEFENDANT-APPELLANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

*Id*. at 312.  On March 31, 2010, the trial court dismissed the petition as untimely and barred by res judicata.  *Id*. at 334.  Petitioner did not appeal this decision.

## III.  **28 U.S.C. § 2254 PETITION**

On December 23, 2011, Petitioner pro se filed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

-6-

.

I.     PETITIONER WAS DENIED HIS CONSTITUIONAL[sic] RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

II.     TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED STATE'S EXHIBITS 8, 9, AND 10.

III.     TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE[sic] BOYNTON TO THE MAXIMUM TERM OF INCARCERATION BY LAW.

IV.     PETITIONER ASSERTS THAT HIS CONVICTION IS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

V.     PETITIONER ASSERTS THAT HIS JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

VI.     PETITIONER CONTENDS THAT THE TRIAL COURT DENIED HIS STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL.

VII.     THE CUMULATIVE ERRORS COMMITTED IN THIS PRESENT CASE DENIED BOYNTON HIS RIGHT TO A FAIR TRIAL.

ECF Dkt. #1 at 13-31.  On May 31, 2012, Respondent filed an Answer/Return of Writ.  ECF Dkt. #9.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.

28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other*

*grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

> ### C.     Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed).   When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).   In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim

anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).  Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

**V**.        **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

>  (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>  (1)   resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

>  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

>  A.   Decisions of lower federal courts may not be considered.
>
>  B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
>  C.   The state court decision may be overturned only if:

1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**VI.** **ANALYSIS**

    **A**.    **PROCEDURAL DEFAULT-GROUNDS FOR RELIEF NUMBERS 1 AND 2**

        **1.**    **Ground for Relief Number 1**

Respondent asserts that Petitioner has procedurally defaulted that portion of his first ground for relief in which he asserts that he was denied the effective assistance of counsel because his counsel failed to request an independent psychological examination to determine his competency.  ECF Dkt. #9 at 59-61.  Respondent indicates that Petitioner failed to present this theory of ineffective assistance of counsel to the Ohio courts and is thus barred from raising it before this Court.  *Id.*

The undersigned notes that Petitioner did in fact undergo a psychiatric examination by the court's psychiatrist as a February 10, 2009 court journal entry indicates that the trial court held a competency hearing on February 9, 2009 and found Petitioner competent to stand trial after the State of Ohio and Petitioner, through counsel, stipulated to the findings of fact contained in the report of the court's psychiatrist.  ECF Dkt. #9-1 at 86.  However, he asserts that counsel was ineffective because he failed to request an independent psychiatric examination.  ECF Dkt. #1 at 19.

-13-

The undersigned recommends that the Court find that Petitioner has procedurally defaulted this part of his first ground for relief.  A petitioner commits a procedural default "by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Carter v. Mitchell*, No. 06-4238, - - -F.3d- - -, 2012 WL 3854787 (6th Cir. Sept. 6, 2012 ), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)) (internal quotation marks omitted).  In order to avoid a procedural default of a ground for relief, a federal habeas petitioner "must have exhausted his or her remedies in state court." *Carter*,  2012 WL 3854787, at *6, citing *O'Sullivan,* 526 U.S. at 842, 119 S.Ct. 1728 and 28 U.S.C. § 2254(b)(1)(A). A federal claim is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 2012 WL 3854787, at *6, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).  An unexhausted claim is procedurally defaulted if the petitioner fails to exhaust state court remedies and state law no longer allows the petitioner to raise the claim. *Carter*, 2012 WL 3854787, at *6, citing *Williams*, 380 F.3d at 967.

In addition, when "a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir.2009).

Here, Petitioner failed to raise his claim of ineffective assistance of counsel for failing to order an independent psychiatric examination before the Ohio appellate court.  ECF Dkt. #9-1 at 214-216.  And while Petitioner did assert this claim as his proposition of law in the Table of Contents section in his memorandum in support of jurisdiction before the Supreme Court of Ohio, he did not state it on his Propositions of Law page and he failed to present any statement, argument or mention of this issue in his actual memorandum in support of jurisdiction.  ECF Dkt. #9-1 at 272, 275, 278-290.  Accordingly, Petitioner did not give the state courts an opportunity to address this claim.  Moreover, Petitioner offers no explanation for his failure to raise this issue

-14-

before those courts.  ECF Dkt. #1 at 19-20.  Consequently, the undersigned recommends that the Court find that Petitioner has procedurally defaulted that part of his first ground for relief asserting the ineffective assistance of counsel for failing to request an independent psychiatric examination.

Interestingly, Respondent conducts a merits analysis on the remaining portion of Petitioner's first ground for relief where he asserts the ineffectiveness of counsel in failing to timely respond to discovery requests by the State of Ohio.  ECF Dkt. #9 at 67-69.  Respondent apparently presumed that Petitioner had asserted in the rest of this ground for relief that counsel's ineffectiveness in failing to respond to discovery prevented him from fully cross-examining the victim.  *Id*.  Respondent merely recites that part of the Ohio appellate court's decision finding that the record belied Petitioner's contention that his counsel's neglect in timely responding to the State's request for discovery prevented him from fully cross-examining the victim. *Id*.  at 68-69.

However, Petitioner does not assert this particular issue in his ineffective assistance of counsel ground for relief before this Court.  Rather, Petitioner alleges that counsel's failure to timely respond to the State's request for discovery denied him the opportunity to fully argue and submit expert testimony of  independent DNA results.  ECF Dkt. #1 at 15-18.  Respondent completely fails to address this portion of Petitioner's ground for relief.  ECF Dkt. #9 at 68-69.

Nevertheless, a review of this claim shows that Petitioner failed to raise it before the Ohio appellate court or the Supreme Court of Ohio.  ECF Dkt. #9-1 at 215, 312-313.  Thus, it is also procedurally defaulted.  Moreover, DNA results would have no impact on the instant case since the case involved a charge of kidnapping and gross sexual imposition.  Counsel and the court did speak of an independent DNA analysis in the proceedings of this case, but it was because all were participants in Petitioner's prior and pending cases in which DNA tests were relevant.  *See* ECF Dkt. #9-2 at 369, 371, 389.  Petitioner's counsel even stated that no DNA evidence existed for the purposes of the criminal case underlying the instant federal habeas corpus case.  ECF Dkt. #9-3 at 775.  The Court should therefore find that Petitioner has procedurally defaulted this part of his

-15-

first ground for relief as well.

The Court can still consider Petitioner's constitutional arguments if the Court determines that  it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent..."  *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986).  The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*  Here, Petitioner has produced no new evidence to carry this burden and he makes no claims of actual innocence.

## 2.   Ground for Relief Number 2

In his second ground for relief, Petitioner asserts that the trial court abused its discretion in admitting exhibits 8, 9, and 10, nude photographs of women, at the trial because the testimony presented by Petitioner's friend as to the photographs established that the nude photographs had nothing to do with Petitioner.  ECF Dkt. #1 at 20-22.  Respondent asserts that this ground for relief is procedurally defaulted and is not cognizable because federal habeas corpus relief does not lie for questions regarding the state trial court's admission of evidence.  ECF Dkt. #9 at 54, citing *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

While Petitioner raised this claim before the Ohio appellate court, that court declined to review the claim because he had failed to follow its appellate procedural rules.  ECF Dkt. #9-1 at 209, 217-219; ECF Dkt. #9-1 at 264.  The Ohio appellate court held:

> In his next assignment of error, Boynton apparently asserts that the trial court improperly allowed into evidence numerous photographs of naked women that Det. Ford found in the East 83rd Street house, and that these photographs, in turn, in addition to his pro se motions, led the trial court to impose the maximum sentence.

-16-

> This court declines to address Boynton's assertion regarding the admission of the photographs into evidence because he presents no authority to support it as required by App. R. 16(A)(7).  App. R. 12(A)(2).

ECF Dkt. #9-1 at 264.  The first prong of the *Maupin* analysis for procedural default is met as Rule 12(A)(2) of the Ohio Rules of Appellate Procedure provides that the appellate court can disregard an assignment of error if the party raising it fails to identify in the record the error upon which the assignment of error is based or fails to argue the assignment of error separately in the brief as required by Rule 16(A) of the Ohio Rules of Appellate Procedure.  Ohio App. R. 12(A)(2).  Rule 16(A) of the Ohio Rules of Appellate Procedure addresses the content of the appellant's brief, which must include: "(7) [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.  The argument may be preceded by a summary."  Ohio App. R. 16(A)(7).  Petitioner failed to follow the appellate rule because he did not present the reasons in support of his contention and failed to cite to supporting authority.

The Ohio appellate court actually enforced this rule by disregarding Petitioner's assignment of error for his failure to follow the rule.  Thus, the second prong of *Maupin* is met.  Third, the application of this rule has been determined to be an adequate and independent state ground upon which to foreclose relief since it "did not require review of any merits and it had a discernable standard of application."  *Banks v. Bradshaw*, No. 1:05CV1141, 2008 WL 4356955, at *11 (N.D. Ohio Sept. 17, 2008), unpublished (Ohio Appellate Rule 12(A)(2) deemed adequate and independent state ground under *Maupin*).  And finally, Petitioner fails to meet the fourth prong of *Maupin* because he fails to establish cause to excuse his default or to otherwise establish his actual innocence.

For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his second ground for relief.

-17-

### B.   NONCOGNIZABILITY-GROUNDS FOR RELIEF NUMBERS 3, 5, 7

Respondent contends that Petitioner's third, fifth and seventh grounds for relief are not cognizable in federal habeas corpus.  ECF Dkt. #9 at 54-55, 61-64.  For the following reasons, the undersigned agrees and recommends that the Court find that grounds for relief three, five and seven of Petitioner's federal habeas corpus petition are not cognizable before this Court and a merits review of Petitioner's third ground for relief finds that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record.

### 1.   Ground for Relief Number 3

In his third ground for relief, Petitioner asserts that the trial court abused its discretion when it sentenced him to the maximum term of incarceration allowed by law.  ECF Dkt. #1 at 23-24.  He contends that the facts did not warrant the maximum sentence and the judge was "vindictive" in imposing the maximum sentence because he had filed motions to disqualify the judge that were denied, which created a "harsh and unpleasant" atmosphere.  *Id*.

The undersigned recommends that the Court find that Petitioner's third ground for relief is not cognizable before this Court.  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  "A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted).  A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action. *Howard v. White,* No. 03–1042, 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003); *Kipen v. Renico*, No. 02–1742, 2003 WL 21130033 (6th Cir. May 14, 2003); *see also Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (citing cases) (federal court

cannot review state's alleged failure to adhere to sentencing procedures).  In *Ruhlman v. Brunsman*, the Sixth Circuit held that "Ohio trial courts have full discretion to impose any sentence within the ranges of [the statute], including the statutory maximum, without making any specific findings of fact or explaining their decisions on the record."  664 F.3d 615, 2011 WL 6441210, at *2 (6th Cir. 2011).        Accordingly, this Court can consider an alleged state court sentencing error only if it violates a petitioner's federal constitutional right to due process or equal protection.  *Pulley*, 465 U.S. at 42.  Respondent alternatively asserts that even if this issue were cognizable, the Ohio appellate court's decision on this issue was not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts of record.  ECF Dkt. #9 at 72.  The undersigned agrees.

In addressing this issue, the Ohio appellate court found that the record failed to demonstrate that the trial court's sentence was "vindictive" or that it "was based upon anything but appropriate sentencing considerations."  ECF Dkt. #9-1 at 264-265, citing *State v. Kalish*, 120 Ohio St. 23, 896 N.E.2d 124, 2008-Ohio-4912 (2008).  The Supreme Court of Ohio also considered Petitioner's motion to disqualify the trial court judge and found no basis for doing so.  ECF Dkt. #9-1 at 168.  The court held that Petitioner's dissatisfaction or disagreement with the trial court's rulings, even if the rulings were erroneous, does not constitute bias of prejudice and was not grounds for disqualifying the judge. *Id.* at 168-169, citing *In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351 (2003); *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484 (2003).  The Supreme Court of Ohio also held that Petitioner failed to explain how the trial court's conduct was unprofessional or showed bias or prejudice, to the extent he sought disqualification based upon that argument.  ECF Dkt. #9-1 at 169, citing *In re Disqualification of Walker*, 36 Ohio St.3d 606 (1988).        The undersigned also notes that the trial court indicated in its sentencing entry that it had considered all of the required factors under the law and found that incarceration was consistent with the purpose of ORC 2929.11.  ECF Dkt. #9-1 at 186.  The entry further noted that Petitioner had been found not guilty of kidnapping and found guilty of gross sexual imposition.  *Id*.  At the sentencing, the trial court indicated that it had reviewed the presentence report and the court

explained the following bases for imposing eighteen months of imprisonment for the gross sexual imposition conviction:

> So I mentioned that you were convicted and sent to prison, and then brought on shock in two case numbers, gross sexual imposition, and the carrying concealed weapon And that was 1994.
>
> And then you were - - then you were convicted of some traffic offenses that are not relevant here, you were convicted in 1996 of aggravated robbery, which is a felony of the first degree.
>
> You obviously were not convicted of aggravated murder, although you were charged with it.  You were sentenced to Lorain Correctional in 1996 for ten to twenty-five years, and that was based on your guilty plea.  You then served your time on that.
>
> You have an outstanding warrant from Garfield Heights going back to 2005. You have some more traffic offenses.  You were - - you, of course, have a pending unlawful sexual conduct case, actually, two of them in this court.
>
> You were convicted of rape in the 511 case number in July of last year.  That case is still active because the Court is still entertaining, and the state is still presenting, evidence on the sexually violent predator specification that hangs off of that indictment.

ECF Dkt. #9-6 at 1364-1365.  The court also considered Petitioner's social history, including the fact that he suffered from seizures and was taking medication for them, that he smoked marijuana, and that he had possible depression issues.  *Id*. at 1365-1366.  The court also considered the fact that the victim was only fourteen years old and that the "mental injury suffered by her due to your conduct was exacerbated because of her tender years, and that, of course, was borne out to the Court from her testimony and manner on the witness stand."  *Id*. at 1366-1367.

The trial court thereafter heard argument from the prosecution, the defense, and took a statement from Petitioner himself.  The court also offered the victim an opportunity to speak as well, but the offer was declined.  ECF Dkt. #9-6 at 1367-1375.  The court then continued with sentencing, stating that it would not consider a disputed juvenile adjudication:

> It's far more relevant to look at what you did in this case, and also the fact that

-20-

you have a significant history of being a sex offender.  This is the second time you've been convicted as an adult of gross sexual imposition.  This is the third time that, by your guilty plea or by a jury's verdict, you've been found guilty of a sex offense.

So that's two GSIs, and then the rape offense.  And then you have other offenses, including serious violent offenses, such as aggravated robbery, for which you served a prison term.  So we can easily forget the matter of the adjudicated delinquent, but I do encourage Mr. Johnson to look into that since Mr. Boynton has to be sentenced on the rape case yet, and he has to stand trial on the other two, and might have one or more sentencings additional on those, it would be nice to have a verification from juvenile court in paper of the record, even though I'm comfortable with the accuracy of it today.

But when I look at the recidivism factors and the charge given from the legislature to the judges to protect the public and punish the offender, I do decide that your sentence be an eighteen-month sentence in Lorain Correctional Institution.

*Id.* at 1378-1379.  The trial court sentenced Petitioner to the maximum sentence allowed by Ohio statute for the fourth degree felony of gross sexual imposition.  *See* ORC §§2907.05(A)(1); 2929.14.  Thus, even if this sentencing issue were cognizable before this Court, Petitioner fails to show that the Ohio appellate's court determination of the vindictiveness issue was contrary to or an unreasonable determination of United States Supreme Court precedent or the facts in the record.  Nor does Petitioner establish that the lawfully maximum sentence imposed by the trial court was contrary to or an unreasonable application of United States Supreme Court precedent or the facts in the record.  The trial court heard argument on sentencing, explained the reasons for the sentence on the record, and even stated on the record that it had no problem with Petitioner's filing of the motion for disqualification which was denied by the Supreme Court of Ohio.  ECF Dkt. #9-1 at 420-421, 1367-1379.

For the above reasons, the undersigned recommends that the Court find that Petitioner's claim of abuse of discretion in sentencing is not cognizable in federal habeas corpus or is otherwise without merit.

## 2.    Ground for Relief Number 5

Petitioner asserts in this ground for relief that his conviction is against the manifest weight of the evidence in his fifth ground for relief.  ECF Dkt. #1 at 26-29.  The undersigned recommends

that the Court find that this ground for relief is not cognizable before this Court.

A claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).  Accordingly, the Court should dismiss this Ground for Relief because it lacks cognizability.  To the extent that this Court wishes to interpret this pro se ground for relief as one of the insufficiency of the evidence, the undersigned shall address this assertion in the merits portion of this Report and Recommendation where Petitioner raises an insufficiency of the evidence claim.  *See Nash v. Eberlin*, 258 Fed. App'x 761, 765,  2007 WL 4438008, at *3, n. 4 (6th Cir.  Dec. 14, 2007), unpublished (court construed manifest weight of the evidence ground for relief into sufficiency of the evidence in federal habeas corpus because pro se claims for relief given liberal construction under federal law and state court decision on manifest weight subsumed decision on sufficiency of the evidence).

### 3.    Ground for Relief Number 7

Petitioner asserts in his seventh ground for relief that the cumulative errors in his case denied him a right to a fair trial.  ECF Dkt. #1 at 31.  The Court should decline to review this ground for relief as well.

In *Moore v. Parker*, the Sixth Circuit Court of Appeals faced the same assertion by a federal habeas corpus petitioner and found that "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." 425 F.3d 250, 256 (6th Cir.2005), citing *Scott v. Elo*, 302 F.3d 598, 607(6th Cir.2002) and *Lorraine v. Coyle*, 291 F.3d 416,

447 (6th Cir.2002). In *Lorraine v. Coyle*, 291 F.3d at 447, the Sixth Circuit noted that "the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." Petitioner cites this Court to no United States Supreme Court holding that supports a cumulative error claim or that requires the review of such a claim. ECF Dkt. #1 at 31. Accordingly, the Court should find that Petitioner's seventh ground for relief is not cognizable before this Court.

### C.    MERITS ANALYSIS

#### 1.    Ground for Relief Number 4

In his fourth ground for relief, Petitioner asserts that insufficient evidence was presented in order to convict him of gross sexual imposition.  ECF Dkt. #1 at 24-26.  Petitioner contends that the victim's testimony about how the incident occurred was so improbable that a jury could not have convicted him of gross sexual imposition.  *Id*.  Without any real analysis, Respondent merely quotes to the Ohio appellate court's opinion on this issue and concludes that the state court decision finding that the conviction was supported by sufficient evidence was not contrary to nor an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts of record.  ECF Dkt. #9 at 75-76.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL

456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson. See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010). If sufficient evidence exists with which to convict, the inquiry ends. *Id.* If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319. This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davi*s, 752 F.2d 1142, 1147 (6thCir. 1985), and *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983).

The Ohio appellate court in this case cited to *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Supreme Court of Ohio case citing to *Jackson*, in determining the proper standard of review for a sufficiency of the evidence claim. ECF Dkt. #9-1 at 265. The appellate court applied that standard and concluded that any rational juror could have found from the victim's testimony that the state proved all of the elements of gross sexual imposition under Ohio law beyond a reasonable doubt. *Id*.

Ohio Revised Code section 2907.05(A)(1) provides in relevant part that "no person shall have sexual contact with another, not the spouse of the offender...when any of the following applies (1) [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.." ORC § 2907.05(A)(1). Sexual contact is defined by Ohio Revised Code section 2907.01(B) as: "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." ORC § 2907.01(B).

-24-

The Ohio appellate court recited the victim's testimony in which she stated that Petitioner showed her photographs of naked women on his digital camera, asked her to pose for him, and began to take her shirt off despite her refusal and attempts to prevent him from doing so.  ECF Dkt. #9-1 at 266.  She testified that Petitioner touched her breast over her bra as he attempted to take off her shirt.  *Id*.  A review of the trial transcript shows that the victim testified that on April 30, 2007, she was walking home from school alone when a man in a car stopped and asked if he could take pictures of her.  ECF Dkt. #9-4 at 971-972.  The victim stated that she said nothing and Petitioner eventually got out of the car and came around and pulled her by the waist into his car.  *Id*. at 973.  The victim stated that she banged on the tinted window telling him to open the door, but he drove her to his house.  *Id*. at 975.  She testified that once at the house, he pulled her out of the car by her wrist and pulled her into the house and upstairs to the bedroom in the house.  *Id.* at 976.  The victim testified that once they were in the bedroom, Petitioner showed her a digital camera with pictures of naked females and told her that he wanted her to do that which was in the pictures and he would pay her.  *Id*. at 978-979.  She stated that she told him that she did not want to and he then began trying to take off her shirt, but she would not let him.  *Id.* at 979-980.  She testified that Petitioner had gotten her shirt halfway off and he touched her breast over her bra while doing so.  *Id*. at 980-981.  The victim testified that she did not want to be touched there, she did not want her shirt off and she did not want Petitioner to take pictures of her.  *Id.* at 982.  She further testified that she was pushing Petitioner's hands away  and trying to push him off of her and he fell back and she ran down the stairs and out of the house.  *Id*. at 982-983.

The Ohio appellate court in this case cited to the transcript of the victim's testimony and found that it presented evidence such that "any rational juror could have found the state proved all the elements of the crime of gross sexual imposition."  ECF Dkt. #9-1 at 266, citing *State v. Rosario*, No. 89770, 2008-Ohio-3804.  Viewing the evidence presented at trial through the victim's testimony, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record as any rational trier of fact could have found the essential elements of the gross sexual

imposition proven beyond a reasonable doubt.

## 2.   Ground for Relief Number 6

In his sixth ground for relief, Petitioner asserts that the trial court denied him his statutory and federal constitutional rights to a speedy trial.  ECF Dkt. #1 at 29-31.  Petitioner complains that a presumption of prejudice exists because he was not brought to trial on the charges until almost two years after his arrest.  *Id.* at 30.  He contends that he was brought to trial 45 days after the Ohio speedy trial clock expired.  *Id.* Petitioner does not explain this calculation and he fails to reference any times, dates or other relevant information, except to state that he "constantly insisted that his attorney do nothing to waive his right to speedy trial."  *Id.*

In his Ohio appellate brief, Petitioner asserted that he was brought to trial 29 days over the time in which he was required to be tried.  ECF Dkt. #9-1 at 227.  He also cited to state and federal law in asserting a violation of his speedy trial rights.  *Id.* at 228.

### a.   Ohio Revised Code Speedy Trial Violation

To the extent that Petitioner alleges that his speedy trial rights under Ohio law were violated, the undersigned recommends that the Court find that this claim is not cognizable in federal habeas corpus.  Federal habeas courts are not the proper forum for relief from state law errors. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law"); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). A federal habeas court is limited to deciding whether the petitioner's conviction violated the Constitution or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "The question of whether [a] state violated its own speedy trial statute is a matter for th[at] state['s] courts." *Kerby v. Brunsman*, 2011 WL 3566121, at *11 (S.D. Ohio Apr. 28, 2011), unpublished, quoting *Mathews v. Lockhart*, 726 F.2d 394, 396 (8th Cir.1984). Accordingly, to the extent that Petitioner bases his speedy trial claim on a violation of Ohio statutory law, the undersigned recommends that the Court find that such claim is not cognizable before this Court.

-26-

**b**.        **Sixth Amendment Speedy Trial Violation**

While the speedy trial state law claim is not cognizable before this Court, Petitioner presents a Sixth Amendment speedy trial violation in his federal habeas corpus petition and he presented such a claim in his brief before the Ohio appellate court.  ECF Dkt. #9-1 at 227-228.  Petitioner asserted that his rights under the Sixth Amendment were violated and he cited the balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) for determining whether a speedy trial violation has occurred.

The Sixth Amendment to the United States Constitution guarantees the accused a speedy trial in all criminal prosecutions.  U.S. Const. amend. VI.  The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  *Barker,* 407 U.S. at  515.  The Supreme Court said that the states "are free to prescribe a reasonable period consistent with constitutional standards."  *Id.* at 523.  The *Barker* Court outlined four criteria by which a court should consider an alleged violation of the constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  *Barker*, 407 U.S. at 530; *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir.), *cert. denied,* 514 U.S. 935 (1998).  A court assesses the prejudice to the defendant in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.  *Id.* at 532. The *Barker* Court explained that none of the four factors is necessary or sufficient to finding a deprivation of the right to a speedy trial, but they must be balanced with other relevant circumstances. *Id.* at 533. In order to trigger a *Barker* analysis, Petitioner must show that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay.*"  Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).  In *Doggett*, 505 U.S. at 651, the Court further described the *Barker* factors as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."

The Ohio appellate court did not specifically address the Sixth Amendment claim in its analysis of Petitioner's speedy trial claim. ECF Dkt. #9-1 at 267. However, in *Brown v. Bobby*, 656 F.3d 325 (6th Cir. 2011), the Sixth Circuit held that a presumption existed in favor of finding that an Ohio appellate court had adjudicated a federal habeas corpus petitioner's Sixth Amendment speedy trial claim on the merits even though the court failed to specifically explain that it was ruling on the merits of that claim and based its decision on the Ohio Speedy Trial statute. *See id.* The Sixth Circuit found that the AEDPA deference applied to the Ohio appellate court's decision and explained that "AEDPA does not require that a state court strictly apply a federal test, as long as the court does not apply any test or standard that is contrary to federal law." *Id.* at 330. The Sixth Circuit found that "Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270–day limit, is not 'substantially different' from the *Barker [v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)] analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner." *Id.* The *Brown* Court noted that while *Barker* did not set a number of days as establishing when a speedy trial violation has occurred, *Barker* did recognize that the States could in fact do so and Ohio did do that with its 270-day limit. *Id.* The *Brown* Court also explained that Ohio courts considered its speedy trial statute to be "coextensive" with the Sixth Amendment's requirement. *Id.* The Court quoted from Ohio's speedy trial statutes and found the various provisions of the statutes, including the time-limit provision and tolling provisions, take into account many of the considerations underlying the *Barker* factors. *Id.* at 330-333. After determining that the state court adjudicated the merits of the Sixth Amendment claim, the Sixth Circuit then reviewed the state court's analysis in *Brown* to determine whether the court had unreasonably applied the *Barker* standard in that case. *Id.* at 331-338. The Court found that the state court was reasonable in determining that no speedy trial violation had occurred. *Id.* at 337.

Thus, while the Ohio appellate court in this case did not directly address the Sixth Amendment speedy trial violation, it did address Petitioner's speedy trial assignment of error, finding that his mere assertion that his trial took place nearly two years after his arrest was insufficient to prove a speedy trial violation. ECF Dkt. #9-1 at 267. The court then cited to its earlier recitation of

the factual and procedural background of the case in its opinion and concluded:

> it was not the trial court that extended the proceedings, but, rather, Boynton himself. Boynton extended the time of his trial when he participated in lengthy discovery and in ongoing plea negotiations, made many requests to reschedule the trial date, replaced his trial attorney, sought referral to the psychiatric clinic, and then filed a motion to remove the judge.  R.C. 2945.72(H); *State v. Banks* (Mar. 24, 1988), Franklin App. Nos. 87AP-842-844.  Moreover, the record reflects Boynton had been indicted in several other cases during the time this case was pending, further complicating the trial court's efforts to move the proceedings to a conclusion.

*Id.*  The court found the following in its earlier background recitation of the case:

> Boynton was indicted in this case on July 10, 2007.  He was charged with two counts:  1) kidnapping, with a notice of prior conviction, a sexual motivation specification, and a repeat violent offender specification; and, 2) gross sexual imposition.  Boynton pleaded not guilty to the charges and was assigned counsel to represent him.

> On July 27, 2007, defense counsel filed motions for discovery from the state. The record reflects defense counsel thereafter also requested several continuances of the matter for purposes of obtaining additional discovery.

> On August 29, 2007, the state provided "DNA and medical reports" to the defense, and the trial court ordered the state to "notify court and counsel by 9/24/07 which [of Boynton's] case[s] it intends to try first."  Thus, although trial in this case originally was set for October 15, 2007, it was 'rescheduled for 10/29/2007 * * * at the request of the defendant."

> On October 29, 2007, however, trial was rescheduled for January 14, 2008 due to ongoing discovery and to resolve pending motions.  On November 30, 2007, the defense informed the trial court that it would receive the results of an independent DNA analysis "next week"' trial remained set for January 14, 2008.

> On January 14, 2008, the trial court issued a journal entry noting that trial was "rescheduled for 1/28/2008 * * * at the request of defendant"; trial in this case was to follow the completion of trial in another of Boynton's cases.

> On January 28, 2008, however, another jounrnal entry issued, indicating that due to ongoing plea negotiations, trial was rescheduled at defendant's request for March 17, 2008.

> On March 17, 2008, defendant once again requested trial to be rescheduled, this time for April 28, 2008.  The record reflects the state requested a two-day

continuance from that date, until April 30, because the prosecutor was engaged in another courtroom.

On April 30, 2008, both parties requested a continuance because they were "engaged in trial in various courtrooms and unavailable." The trial court set a "final pretrial" for May 20, 2008 "to set a new trial date." On May 20, 2008, "at the request of the defendant," trial was set for June 9, 2008.

On June 9, 2008, the trial court issued a journal entry that noted that trial was "rescheduled for June 23, 2008 * * * at the request of defendant" because Boynton's attorney was engaged in another trial. On June 23, 2008, the defense requested yet another continuance to July 7, 2008.

The court's docket reflects "trial did not proceed," however, because defense counsel was engaged in defending Boynton at trial in two other cases. On August 21, 2008, the trial court acceded to "defendant's request" for trial to commence on October 20, 2008.

On October 20, 2008, defendant requested a continuance until December 8, 2008. On November 24, 2008, Boynton's new defense counsel filed a notice of appearance in the case, along with motions for discovery.

On December 8, 2008, trial was set for February 9, 2009 "at the request of defendant." The state filed motions for discovery on December 10, 2008.

On January 16, 2009, new defense counsel requested a referral for his client to the court's psychiatric clinic for "competency/sanity evaluations." The court granted his request. The evaluations were completed by February 9, 2009, at which time the defense stipulated to the clinic's findings and asked that trial be set for April 6, 2009. The court granted the request, but admonished defense counsel to reply to the state's discovery requests.

On March 12, 2009, acting pro se, Boynton filed a motion to disqualify the trial judge. The motion was sent to the Ohio Supreme Court for a decision. In the meantime, on April 6, 2009, acting pro se, Boynton filed in the trial court a motion to dismiss his case "for lack of speedy trial."

On April 7, 2009, upon the supreme court's denial of Boynton's motion to disqualify, the trial court called the case for trial.

*Id.* at 258-261.

Before this Court, Petitioner does not explain how his speedy trial rights were violated beyond generically alleging a Sixth Amendment violation and citing the fact that he was not brought to trial until nearly two years after his arrest. ECF Dkt. #1 at 29-31. Nor does Petitioner present any prejudice resulting from the delay in bringing him to trial. Moreover, application and review of the *Barker* factors leads the undersigned to recommend that the Ohio appellate court's determination was not contrary to or an unreasonable application of *Barker* or an unreasonable determination of the facts of record.

## 1. <u>Delay</u>

The United States Supreme Court has held that the first factor of the *Barker* test, the length of the delay, requires a double inquiry. *Doggett v. United States*, 505 U.S. 647, 651-652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In order to trigger the *Barker* analysis, a defendant must simply allege that the time between "accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* at 652. Once the defendant has done this and the *Barker* analysis is triggered, the Court then considers and balances the delay as one of the factors against the other factors in the analysis. *Id.*

In general, a delay of one year or more between a defendant's indictment and trial is presumptively prejudicial and triggers the *Barker* analysis. *Doggett*, 505 U.S. at 651. However, "deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." *Barker*, 407 U.S. at 521 (no Sixth Amendment right to speedy trial violation when murder trial was delayed five years after arrest where defendant did not pursue speedy trial and there was no showing of serious prejudice).

In the instant case, Petitioner was arrested on May 17, 2007, indicted on July 10, 2007 and not brought to trial until April 7, 2009, nearly two years later. ECF Dkt. #9-1 at 83-84, 175, 195. The length of delay under *Barker* is measured from the date of the indictment or the date of the arrest, whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir.1987). The presumptive prejudice of nearly two years in the instant case therefore triggers the *Barker* analysis in the instant case. The length of

the delay is also considered as one of the factors in the *Barker* analysis.

### 2.    Reasons for the Delay

As to the second prong of the *Barker* analysis, the *Barker* Court explained that "different weights should be assigned to different reasons" for delaying a defendant's trial:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531.  The purpose of this inquiry is to determine "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651.  Delays caused by the defense are to be weighed against the defendant since the defendant's attorney acts as the agent of the defendant. *Vermont v. Brillon*, 129 S.Ct. 1283, 1290-1291 (2009), quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Further, the rule "accords with the reality that defendants may have incentives to employ delay as a "defense tactic"; delay may "work to the accused's advantage" because "witnesses may become unavailable or their memories may fade" over time. *Vermont*, 129 S.Ct. at 1290, citing *Barker*, 407 U.S. at 521.

In the instant case, as found by the Ohio appellate court, most of the delay in bringing Petitioner to trial was caused by Petitioner's actions or the actions of his counsel.  The state court docket shows that most of the trial reschedulings were docketed as "at the request of Defendant." ECF Dkt. #9-1 at 176, 177, 178, 179, 181.  Moreover, Petitioner requested and received new counsel who needed and was granted additional time to prepare for trial.  *Id*. at 180.  Petitioner's counsel also filed for a competency evaluation which was followed by a competency hearing. *Id*. at 180-181.  Petitioner also filed a motion for the disqualification of the trial judge.  *Id.* at 181.  And trial in the instant case was also delayed because of discovery requests, a motion to suppress filed by Petitioner's counsel, plea negotiations, and the fact that trial on Petitioner's other cases was occurring during the same time period. *Id*. at 176-182, 184.  The State filed for only two continuances, one due to counsel's unavailability during the month of February 2008, and one for two days due to

participation in another trial. *Id.* at 178.  The State of Ohio and Petitioner's counsel jointly requested a continuance of the trial date on one occasion because they were engaged in other trials. *Id.*

Accordingly, the Ohio appellate court did not incorrectly or unreasonably find that Petitioner's actions, or the actions of his counsel in seeking continuances and filing pretrial motions, primarily caused most of the delay in bringing him to trial.

### 3.     Assertion of speedy trial rights

The third *Barker* factor shows that Petitioner asserted his speedy trial rights, although not until April 6, 2009, when he filed a motion to dismiss his case due to a lack of speedy trial.  ECF Dkt. #9-1 at 171.  He filed this motion one day before his trial began. *Id.*

### 4.     Prejudice

And finally, the undersigned considers the fourth *Barker* factor, the prejudice to the defendant. *Barker*, 407 U.S. at 530.  Petitioner does not address the issue of prejudice beyond asserting that the interval between his arrest and trial was presumptively prejudicial.   The undersigned finds that little prejudice, if any, resulted from the delay in bringing Petitioner to trial since he was already being held on criminal charges in other cases, and in fact was on trial for charges in other cases during the pendency of the instant case. *See U.S. v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007) (Sixth Circuit  concluded that no prejudice arose from defendant's incarceration "because even if he had not been detained in this case, he would have been in state custody for [charges pending in two other states]").  A court assesses the prejudice to the defendant in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* at 532.  None of these factors are sufficiently present in the instant case.

Accordingly, the undersigned recommends that the Court find no merit to Petitioner's Sixth Amendment speedy trial assertion.

## VII.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court find that:

      A.      Petitioner has procedurally defaulted Grounds for Relief Numbers 1and 2;

      B.      Petitioner's Grounds for Relief Numbers 3, 5, and 7 are not cognizable before this Court;

      C.      Petitioner's Grounds for Relief Numbers 3 is also without merit, as are Grounds for Relief Numbers 4 and 6.

Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice.  ECF Dkt. #1.

DATE: March 5, 2013                /s/ George J. Limbert

                          GEORGE J. LIMBERT
                          UNITED STATES MAGISTRATE JUDGE

      ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).